UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE BOWENS, JAMES CORBIN, KEVIN LITTLE, ROBERT LOZANO, ALBERT PULIDO, DENISE SMITH, CHARLES THOMAS, PERCY MACK, ERIC LOVE, and VONDA WALLACE, | ) ) ) ) ) ) ) | |
| | ) | Case No. 06 C 4915 |
| Plaintiffs, | ) ) | Judge Joan B. Gottschall |
| v. | ) ) | |
| GOVERNOR ROD BLAGOJEVICH, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this case are various individuals who have been convicted of past felonies and have sought executive clemency under the Illinois Constitution and 730 ILCS § 5/13-3-13. Plaintiffs have brought suit in this court against Illinois Governor Rod Blagojevich (the "Governor") seeking injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Specifically, the plaintiffs seek an injunction requiring the Governor to act within a reasonable time on the outstanding recommendations of the Illinois Prisoner Review Board ("PRB").

Furthermore, in their amended complaint, the plaintiffs also allege that some of their petitions for clemency were denied by the Governor in retaliation for filing this suit, and they request an injunction requiring the Governor to disclose the reasons for, and processes employed in, the denial of their petitions for clemency. Currently before this court is the Governor's motion to dismiss the case, pursuant to Federal Rule of Civil

1

Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Governor's motion to dismiss is denied in part and granted in part.

I. ANALYSIS

**A. Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the … claim is and the grounds upon which it rests' … [and] its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra*, 496 F.3d at 776 (quoting *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964, 1973 n.14 (2007)).

**B. Section 5/3-3-13 Creates a Protectable Liberty Interest.**

The Illinois Constitution of 1970 invests the Governor with the power to "grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const. Art V, § 12. Moreover, "the manner of applying [for clemency] may be regulated by law." *Id.* The process of applying for executive clemency under the Illinois Constitution is controlled by 730 ILCS § 5/3-3-13 ("§ 5/3-3-13") and Section 1610.180 of the Illinois Administrative Code ("§ 1610.180"). Briefly, written and signed petitions from individuals seeking executive clemency are reviewed

2

by the PRB. The PRB then determines, by majority vote, what will be its recommendations to the Governor, who is then notified via a written report without publicity. Ill. Admin. Code tit. 20, § 1610.180 (2007). If a petition is denied by the Governor, the Board may not consider another petition from the same petitioner until a full year has elapsed from the date of denial. 730 ILCS § 5/3-3-13(a-5) (2007). However, none of the administrative procedures enacted by the legislature "shall be construed to limit the power of the Governor under the constitution to grant a reprieve, commutation of sentence, or pardon." 730 ILCS § 5/3-3-13(e) (2007). Thus, whether a governor decides to pardon or deny clemency is entirely discretionary, regardless of the recommendation of the PRB.

The plaintiffs assert that they do not seek a necessarily favorable clemency decision, but seek rather to compel the Governor to make timely decisions on their outstanding clemency petitions. Specifically, plaintiffs cite § 5/3-3-13(d) which states: "The Governor *shall decide* each application and communicate his decision to the Board which shall notify the petitioner." 730 ILCS § 5/3-3-13(d) (emphasis added). The plaintiffs argue that the mandatory language of the statute (characterized by the use of the imperative verb "shall") creates a liberty interest in a clemency decision being made (either positive or negative) within a reasonable period of time subsequent to the PRB's recommendation. *See Kraushaar v. Flannigan*, 45 F.3d 1040, 1048 (7th Cir. 1993) (state statutes with a "mandatory character" establish a liberty interest). According to the plaintiffs, a liberty interest thus established is entitled to the procedural protections of the Due Process clause of the Fourteenth Amendment to the United States Constitution. *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (state statutes may create liberty interests that

are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment).

Such state-created liberties are properly analyzed by this court under a theory of procedural (rather than substantive) due process. *Kraushaar*, 45 F.3d at 1047. The question before the court, then, is whether § 5/3-3-13 creates a liberty interest that would trigger a constitutional violation if fair procedures were not followed when depriving a plaintiff of that interest. *Id.* at 1048. As plaintiffs correctly point out, the court should find a liberty interest in a state's statute or regulation only if it employs "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed." *Hewitt v. Helms,* 459 U.S. 460, 471 (1983). The analysis, however, does not stop at that point: the statute in question must also "contain substantive standards or criteria for decisionmaking as opposed to vague standards that leave the decisionmaker with unfettered discretion."[1] *Rickard v. Sternes*, 44 Fed. Appx. 738, 740 (7th Cir. 2002); *Kraushaar*, 45 F.3d at 1048; *Miller v. Henman,* 804 F.2d 421, 427 (7th Cir. 1986). A state therefore creates a protected liberty interest only by placing substantive limitations on official discretion. *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983).

In this case, the Illinois legislature has placed no restrictions on the Governor's discretion whether to grant or deny an individual's application for clemency. But it *has* placed, in § 5/3-3-13, an unambiguous restriction on the Governor's putative discretion whether to make *any* decision at all. The mandatory language of § 5/3-3-13 does not leave the Governor with "vague standards that leave the decisionmaker with unfettered

---

[1] Or, in other words: "[A] liberty interest is created only where the state regulation in question contains 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow....'" *Ky. Dept. of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989).

4

discretion" concerning *when* a clemency decision is to me made (or, indeed, if one is to be made at all). On the contrary, the statutory language is unequivocal: the Governor "*shall decide* each application and communicate his decision to the Board which shall notify the petitioner." 730 ILCS § 5/3-3-13(d). The court finds, therefore, that the Illinois legislature has thus created a procedural due process liberty interest in the procedures governing when and how a clemency position is made once the PRB has submitted its report to the Governor.

The Seventh Circuit has "rejected the notion that any and all state ... rules and regulations containing such [mandatory] language automatically create 'legitimate claims of entitlement' triggering the procedural protections of the Due Process Clause." *Colon v. Schneider,* 899 F.2d 660, 667 (7th Cir. 1990); *see also Kraushaar*, 45 F.3d at 1048-49; *Miller,* 804 F.2d at 424 (some statutes and regulations create only guidelines that direct the manner in which state personnel exercise their discretion to perform certain activities). However, the statutory language of § 5/3-3-13 does not create guidelines by which the Governor's ultimate discretionary clemency decision itself is regulated. The discretionary power to grant or deny a clemency petition remains untouched by the statutory language. Nevertheless, the statute explicitly and unequivocally requires that *some* decision *shall* be made, and it is therein that the state has created a liberty interest protected by the Due Process clause.

Moreover, although § 5/3-3-13 does not specify a time period in which the Governor must make a decision on clemency petitions following submission of the PRB's recommendation, the necessary implication of the statute's imperative language is that the decision be made within a reasonable period of time. *See Agbemaple v. INS*, No.

97 C 8547, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998) (statutory language including "shall" or other mandatory language implies a decision within a reasonable time). Otherwise, the Governor could delay making decisions indefinitely. Such indefinite delays were evidently not contemplated by the drafters of the statute, who also created a protectable liberty interest of petitioners to reapply for clemency, after a year's passage, following a denial of their petition. 730 ILCS § 5/3-3-13(a-5). To permit the Governor to delay clemency decisions indefinitely effectively also infringes this protected right and effectively thwarts the legislature's constitutional right to regulate the process by which pardons are regulated by law. Ill. Const. Art V, § 12

Section 5/3-3-13 creates specific guidelines and criteria that direct the manner in which the Governor exercises his discretion to grant clemency petitions. The Governor's power to grant clemency under the Illinois Constitution remains entirely discretionary and explicitly unfettered by the statute. However, the unequivocal and mandatory language of § 5/3-3-13 requires that the Governor make *some* decision within a reasonable period of time. Under § 5/3-3-13 the Illinois legislature has created a statutory, specific procedure (and thus a colorable right) to petition for clemency; by necessary implication, therefore, there exists a similar right to a decision on that petition.

Plaintiffs have alleged that the Governor has been dilatory or derelict in his duty under the statutory requirements of § 5/3-3-13 to make decisions on clemency petitions within a reasonable time. Whether or not that is the case, of course, cannot be determined without evidence. The court finds, however, that plaintiffs' allegations plausibly suggest that they have a right to relief, and have raised that possibility above a "speculative level" as required by *Twombly*. 127 S. Ct. at 1959.

The Governor's arguement that the plaintiffs seek to impede the Governor's constitutional discretion to grant or deny clemency is without merit. It finds that plaintiffs have alleged claims sufficient to establish a protectable liberty interest in having a decision made concerning their clemency petitions within a reasonable period of time subsequent to the PRB's recommendation. Plaintiffs have therefore adequately stated a claim upon which relief can be granted. The Governor's motion to dismiss this portion of plaintiffs' amended complaint is denied.

## C. Plaintiffs' Claim of Retaliation

The eight plaintiffs whose clemency petitions have been denied also seek injunctive relief, alleging that their petitions for clemency were rejected in retaliation for filing this suit. The plaintiffs seek to compel the Governor to disclose the reasons for, and processes employed in, the decision to deny their petitions for clemency.

The United States Supreme Court has held that, "pardon and commutation hearings have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Dumschat*, 452 U.S. at 464. The Supreme Court has since wrestled with the question of whether an individual has *any* protectable liberty interest in the clemency process. Writing for a plurality in *Ohio Adult Parole Authority v. Woodard*, Chief Justice Rehnquist stated that petitions for commutation of sentence or clemency are simply "unilateral hopes." 523 U.S. 272, 280 (1998) (citing *Dumschat*, 452 U.S. at 465). The Chief Justice went on to remark that finding a due process interest would be "inconsistent with the heart of executive clemency, which is to grant clemency as a matter of grace, thus allowing the executive to consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing

determinations. *Woodard*, 523 U.S. at 280-81. He concluded by noting that "the executive's clemency authority would cease to be a matter of grace committed to the executive authority if it were constrained by … [due process] procedural requirements …." *Id.* at 285.

Justice O'Connor, concurring in the judgment, disagreed, stating that "some *minimal* procedural safeguards apply to clemency proceedings." *Id.* at 289 (O'Connor, J., concurring) (italics in original). Judicial intervention might be warranted, wrote Justice O'Connor, "in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* Likewise, Justice Stevens, suggested that "minimal, perhaps even barely perceptible, safeguards" are required in clemency proceedings. *Id.* at 290 (Stevens, J., concurring in part and dissenting in part) (quoting *Woodard v. Ohio Adult Parole Auth.*, 107 F.3d 1178, 1187 (6th Cir. 1997)). Justice Stevens thus disagreed with the Chief Justice's conclusion that a clemency proceeding could never violate the Due Process Clause, arguing that procedures "infected by bribery, personal or political animosity, or the deliberate fabrication of false evidence" would be constitutionally unacceptable. *Id.* at 290-91. "[N]o one," argued Justice Stevens, "would contend that a Governor could ignore the commands of the Equal Protection Clause and use race, religion, or political affiliation as a standard for granting or denying clemency." *Id.* at 292.

Jurists in lower courts have since cited *Woodard* to promote their competing views of due process requirements in clemency proceedings. *Compare, e.g., Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002) (discretionary relief does not create a liberty

interest protected by the Due Process Clause), *and McCowin v. Kent*, 32 Fed. Appx. 126, 126 (5th Cir. 2002) ("[Plaintiff] does not have a liberty interest in the clemency process."), *with Young v. Haynes*, 218 F.3d 850, 853 (8th Cir. 2000) (Due process is violated if the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions), *and Spivey v. State Bd. of Pardons and Paroles*, 279 F.3d 1301, 1304 (11th Cir. 2002) (Barkett, J., dissenting) (citing *Woodard* in support of the proposition that "prisoners are entitled to a modicum of due process in a clemency proceeding"). However, the courts have not been explicit in addressing precisely how the standard of "minimal, perhaps even barely perceptible, safeguards" is to be analyzed or applied.

Assuming, *arguendo*, that due process requirements establish some minimal procedural safeguards in clemency proceedings, plaintiffs have nevertheless failed to allege sufficient facts to support their claim that their clemency petitions were denied by the Governor in retaliation for filing this suit.

Plaintiffs hang their argument that they were victims of retaliation upon two alleged facts: (1) that eight of the nine petitions that were decided after this suit was filed were refused clemency; and (2) alleged official hostility in the Governor's response to a letter sent by the Cabrini Green Legal Aid Clinic ("CGLAC"), which prepared the clemency petitions. Amended Compl. ¶¶ 48, 49. The alleged hostility is encapsulated in a single sentence in the Governor's response to CGLAC's letter, stating: "[Y]our insinuation that the Governor's Office has not acted expeditiously enough in the clemency arena is not well received." Mem. in Support of Def.'s Rule 12(b)(6) to Dismiss Pl.'s Amended Compl. Ex. A. Given the higher threshold established by the

9

minimal due process safeguards, these alleged facts alone are insufficient to sustain the plaintiffs' claim.

The suit may well have provoked the Governor to attempt to resolve some of the plaintiffs' petitions. However, the quoted language hardly demonstrates a plausible claim that the suit infected the merits of his decision. Permitting conclusory allegations such as those advanced by plaintiffs to justify federal judicial review of the Governor's discretionary and constitutionally unfettered pardoning power impermissibly flies in the face of the Supreme Court's well-established holding that "pardon and commutation hearings have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Dumschat*, 452 U.S. at 464. Were this court to permit judicial review of the Governor's acts based solely upon the allegations presented by plaintiffs, the threshold for judicial review of the Governor's unfettered discretion in granting clemency would drop precipitously, and judicial review of the reasoning behind clemency petitions would likely become impermissibly routine, and perhaps even the norm. The court declines to go in that direction.

Because plaintiffs have not alleged facts establishing a plausible causal nexus between the filing of this suit and denial of their clemency petitions by the Governor, their claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

---

[2] The Governor also claims that plaintiffs' suit is barred by the Eleventh Amendment's prohibition of federal suits by citizens against their own state. Since other arguments are dispositive of this motion to dismiss, the court merely notes in passing that it is well-established that where a challenged action by a state official is found to be unconstitutional, a federal court may grant prospective injunctive relief against that official in order to prevent a continuing violation of federal law. The Governor's argument is therefore without merit. *See, e.g., P. R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Parents for Quality Educ. With Integration, Inc. v. State of Ind.*, 977 F.2d 1207, 1209-10 (7th Cir. 1992).

## II. Conclusion

For the reasons set forth above, the Governor's motion to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied in part and granted in part.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 11, 2008